UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL J. DONOVAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00077-MJK |
| | ) | |
| OFFICE OF THE DISTRICT ATTORNEY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION[1]**

Daniel Donovan is suing the Office of the District Attorney, Alan Kelley, the deputy

district attorney for prosecutorial district IV, and Paul Rucha, an assistant district attorney for the

same district, for the role that office and those individuals played in a long-running dispute

between Donovan and state authorities over post-conviction DNA testing.  This case does not

represent Donovan's first attempt to obtain relief in federal court on this issue.  See Donovan v.

Fowle, 762 F. Supp. 2d 186 (D. Me. 2011).  Donovan seeks injunctive and declaratory relief,

including, most notably, a permanent injunction prohibiting the enforcement of any state sex

offender registration laws against him.  His claim is that the Maine statutes relevant to DNA

testing and enacted into law since the date of his May 1996 conviction are unconstitutional

and/or have been applied to his situation in an unconstitutional manner.  The defendants have

filed a motion for summary judgment against Donovan's claims.  (ECF No. 24.)  I now grant the

defendants' motion and order that judgment be entered for the defendants.

---

[1]     Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret
J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

### BACKGROUND

Because this case has such a long and contentious history, it is necessary to relate some of the background in order to understand the true nature of this dispute.  During the night of June 22, 1994, Donovan, his girlfriend Robyn R., and two friends were celebrating Robyn's recent divorce at Donovan's house in Monmouth, Maine.  State v. Donovan, 1997 ME 181, ¶ 2, 698 A.2d 1045, 1046.  An incident ensued between Donovan and Robyn, described in the Maine Law Court opinion, which forms the background for this lawsuit.  Ultimately the police arrested Donovan for sexual assault.  Among the sources of potential DNA evidence seized by the police were both a used condom found in Donovan's kitchen trash on the evening of June 22, 1994, and a vaginal swab taken from Robyn some hours after the incident.

Deputy District Attorney Alan Kelley, one of the named defendants, prosecuted the State's case against Donovan.  At trial, Donovan argued that he did not have sexual intercourse with Robyn during the morning of June 22, 1994, and that no crime occurred.  Allison Gingrass, a forensic chemist with the Maine State Police Crime Laboratory who analyzed several items of physical evidence, testified about possible identification of the individual who deposited semen found on Robyn's external genitalia during her second hospital visit (Robyn had declined an examination immediately after the incident) and in the condom found in Donovan's kitchen trash can.  Gingrass concluded that at least some part of the mix of blood and semen on a swab containing fluid taken from Robyn's external genitalia belonged to an individual in her blood group.  Gingrass also testified that in a mixture of fluids a more prevalent fluid could mask others, making it difficult to determine if a different blood group was present.  Donovan was of a different blood group than Robyn, and no evidence of his blood group was identifiable on the swab.  Gingrass further testified that the semen in the condom found by the police in Donovan's

kitchen trash can came from someone with Donovan's blood group, and that a pubic hair found in the condom was similar to a sample taken from Donovan and dissimilar to a sample taken from Robyn.  Finally, Gingrass testified it could not be determined when the condom was used.

In his closing argument at Donovan's criminal trial, Deputy D.A. Kelley referred to Gingrass's analysis and reiterated that Donovan's blood group was consistent with that of the semen in the condom.  Kelley argued that Donovan attempted to conceal the condom by throwing it in the trash.  The jury found Donovan guilty of gross sexual assault, assault, criminal mischief, and the violation of a bail condition.  He was sentenced to twenty years, with all but fifteen years suspended, followed by six years of probation on the gross sexual assault charge. Donovan subsequently appealed his convictions to the Maine Supreme Judicial Court on various grounds unrelated to the DNA issues presently at hand.  The Maine Supreme Court affirmed Donovan's criminal convictions in all respects.  The Superior Court then granted what has ultimately become a prescient motion by Donovan to preserve the evidence.  In 1999 the Superior Court also conducted a post-conviction review hearing on Donovan's claim of ineffective assistance of counsel and found against him.  Donovan v. Maine, CR-98-71 (Me. Super. Ct., Ken. Cty., Sept. 10, 1999).  The Law Court denied the request for a certificate of probable cause.  Donovan v. Maine, No. Ken-99-664 (Me. Dec. 20, 1999).  Donovan filed a habeas petition in this court on September 26, 2000, which was ultimately dismissed as untimely on the recommendation of Magistrate Judge David M. Cohen.  Donovan v. State of Maine, 2:00-cv-00268-DBH.

In 2002, Donovan filed a post-conviction motion for DNA analysis under a newly enacted Maine statute in which he sought to have several pieces of evidence analyzed.  In addition to denying that he had sexual intercourse with Robyn on the morning of June 22, 1994,

Donovan argued that Robyn had consensual sexual intercourse with another man between her first and second visits to the hospital on June 22, 1994, and that the other man was responsible for the semen found on the swab.  The Superior Court denied Donovan's motion and granted the State's motion to dismiss pursuant to Maine's newest post-conviction DNA analysis statute, 15 M.R.S. §§ 2136-2138 (2003).  The Superior Court concluded that Donovan had presented prima facie proof that the evidence he sought to have analyzed was, pursuant to Section 2138(4)(A), material to his identity as the perpetrator of the gross sexual assault against Robyn.  However, the Superior Court further concluded that Donovan failed to present prima facie proof that, pursuant to Section 2138(4)(E), identity was at issue during Donovan's criminal trial.  On appeal, the Maine Supreme Judicial Court noted that it was interpreting the "post-convictions DNA analysis statute" for the first time.  State v. Donovan, 2004 ME 81, 853 A.2d 772, 775.  For purposes of meeting the requirements set forth in the post-conviction DNA statute, the Court concluded that identity was always at issue in a criminal trial unless the defendant admitted to having engaged in the alleged criminal conduct and relied on a defense such as consent or justification.  Id. at 776.  Consequently, the Supreme Court vacated the Superior Court's order and remanded Donovan's case for further proceedings consistent with its opinion, setting in motion a chain of events culminating in this lawsuit.

Following the remand, in January 2005 Stephen Shargo examined the vaginal swab taken from Robyn that Allison Gingrass testified about at Donovan's criminal trial.  Gingrass had found both blood and semen on the swab, but Shargo found no semen on the remains of the swab.  Shargo explained that he did not find semen on the remains of the swab because the sample that Gingrass tested was no longer available.  Shargo explained that it was "not unusual to test different portions of a gauze pad and obtain different results," and that "the [original]

examiner usually chooses 'the best' source to cut for the analysis." Donovan v. Fowle, 762 F.

Supp. 2d 186, 194 (D. Me. 2010).  Donovan filed a motion for further post-conviction review

predicated on the results of Shargo's DNA testing of the swab.  According to Donovan, Shargo's

testimony was "newly discovered evidence that testimony at his trial was false or erroneous."  Id.

      Defendant Paul Rucha, in his capacity as Kennebec County Assistant District Attorney,

filed the State's motion to dismiss the petition for post-conviction review.  The post-conviction

court concluded that the record evidence in Donovan's case failed to show, under any standard,

that his criminal conviction was unlawful and so denied Donovan's petition for post-conviction

relief.

      In 2008, Donovan filed a second motion for DNA testing.  The Superior Court denied it

on the ground that there was no sufficient basis provided to justify a second testing.  Id. at 195.

Donovan unsuccessfully moved for reconsideration of that order and, assisted by counsel, argued

that the Kennebec County Superior Court erred when it denied Donovan's request for a new trial

pursuant to the post-conviction DNA analysis statute, 15 M.R.S. §§ 2136-2138.  Donovan

asserted that he was entitled to a hearing under 15 M.R.S. § 2138(8)(B), which then provided:

> If the results of the DNA analysis show that the person is not the source of the
> evidence and the person does not have counsel, the court shall appoint counsel if
> the court finds the person is indigent.  The court shall then hold a hearing pursuant
> to subsection 10.

P.L. 2005, ch. 659, § 4 (effective date Sept. 1, 2006).  Donovan reasoned that pursuant to 15

M.R.S. § 2138(8)(B) he was a person shown not to be the source of the DNA evidence and was

therefore entitled to an evidentiary hearing on whether or not he was entitled to a new trial.  In

support of his request for a hearing, Donovan contended that the complete lack of any DNA on

the gauze pad entitled him to that hearing.  The Maine Supreme Court ruled that Donovan's

contention was "without merit" and held that "no further hearing or other action [was] necessary to a fair disposition of the matter."  Maine v. Donovan,  No. Ken-08-699 (Me. July 2, 2009).

Following the denial of that certificate of probable cause, Donovan brought his first lawsuit against District Attorney Fowle, Kelley, and Rucha in this Court seeking both monetary damages and equitable relief.  Donovan v. Fowle, 762 F. Supp. 2d 186 (D. Me. 2010) (Case No. 1:09-cv-00328-JAW; Recommended Decision at ECF No. 64; Order Adopting Recommended Decision at ECF No. 70).

### UNDISPUTED MATERIAL FACTS AS SET FORTH BY THE PARTIES

The facts related to Donovan's first civil law suit in this Court do not appear to be disputed at all and can be gleaned from a review of the published decision, though they are also set forth in the defendants' statement of material facts.  In a July 28, 2009, complaint filed in this court, Daniel Donovan alleged that on February 6, 1996, he was convicted of gross sexual assault and on May 8, 1996, received a twenty year sentence, all but fifteen years suspended, followed by six years of probation.  As a consequence of his conviction and sentence, Donovan was incarcerated in Maine Department of Corrections facilities from at least September 1995 to December 28, 2004.  Donovan alleged that at the time he filed the federal lawsuit, he was on state probation and scheduled to remain on state probation for about two years.  Donovan alleged that because of his conviction, he was subject to lifetime registration as a sex offender.  Because of the lifetime registration requirement, Donovan is required not only to maintain his registration, but also to pay registration fees and to provide a passport photograph each time he re-registers.

Donovan asserted that he was actually innocent of the crime of gross sexual assault and he sought an order requiring the State to hold an evidentiary hearing to allow him the opportunity

to make a showing of actual innocence.  Donovan contended that by denying him a right to a

hearing, the State Defendants in that first federal lawsuit, Fowle, Kelley, and Rucha, violated his

rights to due process and other rights under both the United States Constitution and the Maine

Constitution.  Donovan sought an injunction that would prohibit the state defendants from

interfering with his right to a hearing and he asked for a hearing in this Court concerning the

alleged deprivation of his constitutional rights.

In his response to the defendants' motion for summary judgment in that case, Donovan

relayed the history of his case through his appeals and the Superior Court dispositions of his

demands that the state perform DNA testing.  Donovan stressed that he was not seeking to have

his conviction vacated or for redress for damages caused by the state courts;  instead, he sought

redress for harm that the named defendants caused him by standing between him and his desired

post-conviction evidentiary hearing.

On August 9, 2010, I issued a recommended decision advising that the Court grant the

Defendants' motion for summary judgment.  Donovan, 762 F. Supp. 2d at 190 (Recommended

Decision).  I concluded that Donovan's case was not barred by the Rooker–Feldman doctrine and

therefore reached the merits of his claims.  My recommendation turned, in large measure, on the

fact that the state defendants, all prosecutors, were entitled to prosecutorial immunity.  All of the

alleged violations pertained to duties performed pursuant to the prosecutors' roles as advocates

and I recommended that the motion for summary judgment be granted on that basis.

On September 8, 2010, Donovan objected to the recommended decision.  (No. 1:09-cv-

00328-JAW, ECF No. 67.)  Donovan contended that the rationale for granting summary

judgment was "extraordinary and outrageous."  (Id. at 1.)  Donovan asserted that Defendant Alan

Kelley knew throughout his trial that "he had elicited and continually relied on false testimony

from former Maine State Police Forensic Chemist, Allison Gingrass."  (Id. at 2.)  Donovan

contended that Kelley's actions did not fit within the scope of the prosecutor's advocacy

function, but were within the scope of the prosecutor's administrative or investigative functions.

However, in its order affirming the recommended decision, this Court concluded that Assistant

District Attorney Alan Kelley's examination in court of the prosecution's expert witness Allison

Gingrass fell well within the scope of prosecutorial immunity for advocacy.  Donovan, 762 F.

Supp. 2d at 191 (Order Affirming Recommended Decision) (Jan. 20, 2011).  The Court also

concluded that Donovan waived any claim against either District Attorney Evert Fowle or

Assistant District Attorney Paul Rucha by failing to articulate any objections to the

recommended decision in regard to those two Defendants.  Id. n.2.  Donovan filed a notice of

appeal on February 18, 2011, but later withdrew his appeal.

Donovan has filed a statement of additional material facts primarily relating to changes in

Maine's DNA testing laws and to prior state court proceedings involving the various statutes,

most recently Donovan's motion for a new trial, ostensibly filed under the "current" DNA law.

This distinction between the old and current version of the post-conviction DNA analysis statute

is understood by a comparison of Public Law 2005, chapter 659 and Public Law 2011, chapter

230.  The later public law amended the statute effective September 28, 2011.

On or about May 15, 2011, Donovan filed a motion for a new trial under the post-

conviction DNA analysis statute, 15 M.R.S. § §§ 2136-2138, which did not inhibit Donovan's

filing of such a motion.  See P.L. 2005, ch. 659.  According to his complaint, that motion was

denied on September 12, 2011.  On September 26, 2011, prior to the effective date of the 2011

amendment, Donovan filed a notice of appeal with the Maine Supreme Judicial Court ("Law

Court"), identifying numerous alleged violations for appellate review.  Two days later, P.L.

2011, ch. 230 came into effect and amended the DNA analysis statute to read:  "The State or an aggrieved person may appeal as a matter of right from a court decision to grant or deny the person a new trial."  See 15 M.R.S. § 2138(11).[2]  On November 1, 2011, the Law Court issued a notice of docketing with docket number KEN-11-520 ordering eight copies of a memorandum in support of a certificate of probable cause.  On November 28, 2011, under docket number KEN-11-520, Donovan complied with the November 1, 2011, order and filed eight copies of his memorandum in support of certificate of probable cause.  On February 6, 2012, under docket number KEN-11-520, the Maine Law Court declined to issue a certificate of probable cause.  In other words, the Law Court did not grant Donovan an appeal as a matter of right.

Donovan provides additional statements regarding the earlier litigation set forth in the defendants' statement of material facts.  He notes that he filed and successfully appealed under Maine's "original" DNA statute and obtained the DNA testing.  Upon completion of DNA testing Donovan requested a new trial under Maine's "original" DNA statute.  See P.L. 2005,ch. 659, § 5.  He was never granted a new trial.

The amendments to Title 15, Chapter 305-B of the Maine Revised Statutes, which are the subject of Donovan's current federal litigation, occurred after Donovan filed for and then successfully appealed an order to obtain DNA testing under Maine's "original" DNA law.  The original Donovan lawsuit, 762 F. Supp. 2d 189, involved Maine's "original" DNA analysis statute and the present § 1983 complaint (1:12 CV-00077-MJK) involves Maine's "current" DNA analysis statute.

---

[2]        The defendants' response to this statement of fact is as follows:  "Denied. 15 M.R.S. § 2138(11) states: "An aggrieved person may *not* appeal from the denial of a new trial as a matter of right." See 15 M.R.S. § 2138(11) (emphasis added)."  The defendants are quoting the language of the section as it appeared in 2001 and 2006 versions of the statute.

**DISCUSSION**

Donovan's complaint purports to challenge both Maine's "Post Judgment of Conviction Motion for DNA Analysis" Act, 15 M.R.S. §§ 2136-2138, and its "Sex Offender Registration and Notification Act," 34-A M.R.S. §§ 11271-11304.  According to Donovan's complaint both statutes are being unconstitutionally applied against him in violation of both the United States Constitution and the Maine Constitution.   Donovan claims that his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and analogous provisions of the Maine Constitution are being violated.  Donovan's core allegation is that he was wrongly convicted in this "he said/she said" acquaintance rape case because of the imprecise and misleading testimony of Allison Gingrass related to his blood group and its relationship to his status as a secretor of antigens in connection with a test sample taken from a used condom and a vaginal swab.  From that basic premise Donovan sought and ultimately obtained a DNA test of the vaginal swab about which Gingrass testified.  Unfortunately, subsequent examination revealed that all usable DNA had been destroyed in the original test.

Donovan believes the original version of the DNA statute, as enacted in 2001, required that if the results of the DNA analysis showed that the convicted person was not the source of the evidence, then the Court was required to hold a hearing without any further action on the defendant's behalf and determine if there was clear and convincing evidence that would entitle him to a new trial.  Although testimony was taken regarding the DNA evidence, Donovan believed he never received the full evidentiary hearing to which he was entitled.  He sued these defendants in the first lawsuit essentially complaining about their advocacy in seeking to deny him that hearing.

Beginning in 2006 subsequent amendments to the DNA statute spoke in terms of a "motion for a new trial" and specified with more particularity the standards for granting a new trial.  P.L. 2005, ch. 659, §§ 1, 5.  Then most recently the statute was amended to allow for an appeal as a matter of right to the Law Court from a court decision to grant or deny the person a new trial.  P.L.

10

2011, ch. 230, § 2 (codified at 15 M.R.S. § 2138(11)).  But that statute became effective on September 28, 2011, two days after Donovan filed his notice of appeal in the state proceeding, which notice the Law Court treated as a request for a certificate of probable cause under the "old" discretionary review procedure.  In other words, Donovan's claim of denial of his rights rests on two propositions.  The first is that he qualifies as a person whom the DNA analysis shows was not the source of the evidence because the DNA analysis could not be performed and, therefore, he should have been granted a full evidentiary hearing on his new trial motion.  The second is that he had a statutory right to appeal to the Law Court without obtaining a certificate of probable cause.

The defendants seek summary judgment in this case, arguing three basic principles.  First, as to Donovan's claims that Maine's Sex Offender Registration and Notification Act violates his rights and that his rights under the Maine constitution have been violated, the defendants argue that Donovan has presented no developed argument and the claims should be deemed waived. (Defendants' Reply at 1, ECF No. 30.)  Second, as to the claims against Kelley and Rucha, defendants argue that the doctrine of claim preclusion bars relitigation of the issues regarding these defendants' conduct during the litigation of the criminal matter and subsequent DNA motion hearings.  Finally, the defendants argue that to the extent this complaint is an official-capacity complaint seeking this court's determination that the Post-Judgment Conviction Motion for DNA Analysis Act, 15 M.R.S. § 2138, has been unconstitutionally applied in his case or is unconstitutional on its face, then the claim fails on its merits.  Each of the defendants' contentions is discussed in turn and Donovan's propositions are rejected in the process.

## A.    Arguments Deemed Waived

I agree with the defendants that Donovan has no developed arguments pertaining to any alleged violations under the Maine Constitution or the Sex Offender Registration and Notification Act.  At least in terms of appellate advocacy it is the well-established rule in this circuit that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived." Harriman v. Hancock County, 627 A.2d 22, 28 (1st Cir. 2010) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  Trial courts have likewise adopted the same rule when a plaintiff makes only cursory reference to a possible legal argument.  Whouley v. Shoreham, Inc. No. 1:08-cv-00411, 2009 WL 762315, *3 (D. R.I. 2009).  The sex offender registration system has been challenged in both state and federal court on a variety of theories, none of which is even hinted at by Donovan.  In essence, his challenge is directed toward the DNA analysis statute and he only mentions the registration requirement because in his view that is one of the unpleasant consequences of being wrongfully denied a new trial under the DNA analysis statute.  As such, his attack is totally dependent on his arguments concerning the DNA analysis statute.  I grant defendants' motion for summary judgment as to both of these claims.

**B.      Claim Preclusion**

To trigger claim preclusion, there must be "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Hatch v. Trail King Indus., 699 F.3d 38, 45 (1st Cir. 2012).  With respect to sufficient identicality between the causes, sufficient identicality will be found if the prior claims and the current claims arise from a common nucleus of operative facts.  Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011);  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 32 (1st Cir. 1998).  If these elements are established, the parties are barred from relitigating previously disputed matters and from introducing related matters that could have been presented in the first case.  See Dennis v. Rhode Island Hosp. Trust Nat'l Bank, 744 F.2d 893, 898 (1st Cir. 1984);  see also Herman v. Meiselman, 541 F.3d 59, 62 (1st Cir. 2008) (identifying finality, identity of parties, and identity of causes as the three claim preclusion requirements of federal common law).

As to events associated with the 2009 federal litigation—whether those events arose under the 2001 or the 2006 version of the DNA law, claim preclusion bars relitigation of claims against

Rucha, Kelley, or the District Attorney's Office.  It matters not that the "office" was not a named party in the first lawsuit.  The district attorney himself, Everett Fowle, was a party to the prior litigation and any official claims were brought, or could have been brought, against him.  There was clearly a final judgment on the merits in the prior lawsuit;  the subject matter of the prior suit, at least as to events prior to May 2011, is identical;  and the parties are virtually identical.  As to the events after May 2011, the month in which Donovan filed his motion for new trial under the post-conviction DNA analysis statute, Donovan's summary judgment facts do not reveal what role, if any, Kelley and Rucha played in the denial of his motion and the denial of the certificate of probable cause, other than the docket entries indicating Rucha's advocacy role in the proceeding on behalf of the State of Maine.  There is no record evidence of any constitutional violations by either Rucha or Kelley and there are no surviving claims against either prosecutor.

## C.    Merits of the Post-May 2011 Claims Against the District Attorney's Office

For purposes of this motion, I will assume that the District Attorney's Office is the proper defendant in this as-applied constitutional challenge to the current DNA analysis statute.  As I understand Donovan's complaint and summary judgment record, he believes he has been denied the process he is due under Maine's statutory scheme.  His complaint seeks injunctive relief, including a declaration that the defendants' acts violated his constitutional rights and a permanent injunction barring the defendants from enforcing the sex offender registration laws against him.  (Compl. ¶ 77(a), (i), ECF No. 1.)

As a preliminary matter, I question Donovan's major contention that the Maine Law Court violated the statutory procedure by not treating as an appeal of right under the "current" DNA statutory scheme his notice of appeal from an order denying him a new trial.  That statute did not come into effect until September 28, 2011,[3] two days after Donovan filed his notice of appeal and the Law Court treated Donovan's appeal as a discretionary appeal and denied a certificate of

---

[3]    P.L. 2011, ch. 230 (effective Sept. 28, 2011).

probable cause.  Even if the statutory procedure could somehow be made applicable to Donovan's case, it is not *constitutionally* mandated that someone in Donovan's position would be entitled to an appeal of right from a determination such as this one.  The United States Supreme Court has made it clear that state courts and legislatures have wide latitude in determining the procedures to follow in claims of this nature.  When the State chooses to offer a convicted criminal defendant help in obtaining relief from his state conviction by newly enacted legislation, federal courts cannot upset the State's procedural mechanisms for such relief unless the procedures are fundamentally inadequate to vindicate substantive rights.  See District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 69 (2009).  In the circumstances of this case, Donovan has suffered no deprivation of any fundamental right.

As the Supreme Court pointed out in Osborne:  "DNA testing alone does not always resolve a case.  Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent."  Id. at 62.  Donovan refuses to accept this basic premise.  Contrary to his interpretation, DNA testing in this case has not shown that he was not the source of the evidence.  The post-judgment DNA testing was inconclusive because evidentiary material had been compromised during the first test and no DNA was available for testing.  Additionally, the scientific evidence at trial did not conclusively suggest that Donovan was the only possible source of the fluid found on the vaginal swab.  While the presence of another male's DNA on the vaginal swab would have certainly provided ammunition for Donovan's theory that the victim engaged in consensual sex after her first visit to the hospital, it would not have proven that Donovan was innocent of the earlier sexual assault in any event.  In the final analysis, this case turned on a version of events recounted by the victim and not on the availability of DNA evidence.  The two basic assumptions upon which Donovan built this lawsuit, that he was proven not to be the source of the DNA and that he had an appeal as a matter of right from the trial court's denial of his motion for

14

a new trial, are both flawed assumptions.  There is no constitutional flaw in the State of Maine's

DNA statute as it was applied to the facts of Donovan's case.

### CONCLUSION

The entry will be:  Judgment for the defendants.

***So Ordered.***

January 4, 2013                         /s/ Margaret J. Kravchuk
                                                 U.S. Magistrate Judge